## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DEANGELIA KING,** | ) | **JURY TRIAL DEMANDED** |
| **individually and as the** | ) | |
| **Wrongful Death Beneficiary of,** | ) | |
| **and as Personal Representative of,** | ) | |
| **Estate of MICHAEL T. FORD, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No._____** |
| | ) | |
| **CITY OF HOUSTON; RYAN HOBBS;** | ) | |
| **MOLLY MOCKLER;** | ) | |
| **JEREMY NOVAK; and** | ) | |
| **MARCUS GRIJALVA,** | ) | |
| **in their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

United States Courts
Southern District of Texas
FILED

OCT 20 2025

Nathan Ochsner, Clerk of Court

## COMPLAINT

COMES NOW, Deangelia King (hereinafter "Plaintiff"), *in pro per*, who

moves this Honorable Court with the instant *Complaint*. In support thereof,

Plaintiff avers the following:

### I. PARTIES

1. Plaintiff is the mother of Michael T. Ford, Jr., deceased. She brings this

    action individually under the *Texas Wrongful Death Act* and on behalf of the

    Estate under the *Texas Survival Statute*. She resides in Harris County, Texas.

2.  Defendant City of Houston is a Texas municipal corporation that operates Houston Fire Department ("HFD") and Houston Emergency Medical Services ("EMS"). It may be served through the City Attorney or as otherwise provided by rule.

3.  Defendants Ryan Hobbs, Molly Mockler, Jeremy Novak, and Marcus Grijalva were at all relevant times HFD/EMS personnel acting under color of state law. They are sued in their individual capacities.

## II. JURISDICTION AND VENUE

4.  Federal-question jurisdiction exists under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims under 42 U.S.C. § 1983 and *Title VI of the Civil Rights Act of 1964*, 42 U.S.C. § 2000d.

5.  The Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

6.  Venue is proper in this District under 28 U.S.C. § 1391(b) because all defendants reside in this District and the events giving rise to these claims occurred in Houston, Harris County, Texas.

## III. FACTS

7.  On August 18, 2023, Michael T. Ford, Jr., age 27, suffered gunshot wounds in Houston, Texas, around the corner from HFD Fire Station 55, 11402 Cullen Blvd.

8.  HFD/EMS personnel—identified on information and belief as Defendants
    Hobbs, Mockler, Novak (Captain), and Grijalva—responded to the scene.

9.  Michael was a Black male. The responding crew was white.

10. Plaintiff will offer HFD EMS records and the autopsy establishing that
    <u>resuscitation was withheld</u> and <u>no CPR was performed by EMS</u> despite the
    presence of a bystander performing chest compressions before HFD arrived.
    *See* EMS patient care documentation and autopsy report (to be attached as
    exhibits).

11. HFD's *Patient Care Guidelines and Standing Orders* for BLS/ALS—revised
    September 10, 2022—require immediate assessment and resuscitative efforts
    for traumatic arrest unless narrow, specifically documented criteria are met.

12. The HFD crew spent approximately seven minutes in total on the call, with
    roughly two minutes in travel and only minutes on scene. No Advanced Life
    Support unit evaluated Michael; no defibrillation, airway management,
    oxygenation, or other advanced interventions were attempted.

13. Captain Novak was the on-scene supervisor and allowed or directed the
    withholding of resuscitative efforts in contravention of HFD protocols.

14. The crew pronounced Michael deceased without undertaking mandated
    resuscitative measures, despite the proximity to the fire station and the
    availability of ALS interventions.

15. The decision to withhold care was unreasonable, medically unjustified, and motivated at least in part by race-based animus or by a racially discriminatory custom of providing inferior emergency care in predominantly Black neighborhoods.

16. Plaintiff promptly complained to HFD Professional Standards and sought records including 911 audio. HFD has refused or delayed production of material records.

17. The City of Houston maintains final authority over HFD policies, training, supervision, and discipline. On information and belief, the City's failure to train and supervise on compliance with its own resuscitation protocols, and its tolerance of discriminatory provision of services, caused the constitutional injuries and Michael's death.

18. The City's policymakers ratified the conduct by failing to investigate and discipline, despite notice that protocols were disregarded and lifesaving care withheld.

## IV. LEGAL STANDARDS TO BE PLEADED WITH PARTICULARITY

19. Under § 1983, intentional race discrimination by government employees in the provision of public services violates the *Equal Protection Clause* of the Fourteenth Amendment.

20. Government actors are not entitled to qualified immunity where a complaint pleads specific facts showing a violation of clearly established law. It has long been clearly established that providing or withholding government services on the basis of race is unconstitutional and that supervisors may be liable when their own actions cause such violations.

21. Municipal liability attaches under *Monell* where a policy, custom, failure to train, or ratification by a final policymaker is a moving force of the constitutional deprivation.

## COUNT 1 – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

*(Against Defendants JEREMY NOVAK, RYAN HOBBS, MOLLY MOCKLER, and MARCUS GRIJALVA, in their Individual Capacities)*

### A. Legal Basis

1. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Fourteenth Amendment to the *United States Constitution*, specifically the right to equal protection of the laws.

2. The Fourteenth Amendment prohibits state actors from engaging in intentional discrimination on the basis of race or from applying state services in a racially disparate manner. See *Village of Arlington Heights v.*

*Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

3. Defendants, acting under color of state law as employees and agents of the Houston Fire Department ("HFD") and the City of Houston, denied Plaintiff's son, Michael T. Ford, Jr., equal protection by refusing to provide emergency medical treatment on account of his race and the racial composition of the neighborhood where the incident occurred.

## B. Factual Allegations Incorporated

4. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

5. On August 18, 2023, Plaintiff's son, Michael T. Ford, Jr., an African-American male, was shot in a drive-by shooting a short distance from HFD Fire Station 55, located at 11402 Cullen Blvd., Houston, Texas 77047.

6. The responding HFD EMS crew—comprised entirely of white personnel, Captain Jeremy Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva—arrived on scene approximately two minutes after dispatch.

7. Despite their proximity, training, and availability of advanced medical equipment, the Defendants made a deliberate decision to withhold all

resuscitative measures, including CPR, oxygenation, defibrillation, or ALS evaluation, and pronounced Michael dead within minutes of arrival.

8. *The HFD Patient Care Guidelines and Standing Orders* for BLS/ALS (Revised September 10, 2022)—which are mandatory for all HFD EMS personnel—require the initiation of CPR and continued resuscitation efforts in trauma cases unless there are clear, objectively verified signs of irreversible death (e.g., decapitation, rigor mortis, decomposition).

9. None of those exclusionary conditions were present. Eyewitnesses, including bystanders performing CPR, observed that Michael still had warmth, body tone, and signs of recent respiration.

10. Nevertheless, the Defendants, acting in concert, failed to follow these mandatory protocols. Instead, they displayed open disregard and indifference toward the Black victim, dismissing the emergency within a span of seven minutes.

11. The Defendants did not summon an ALS unit as required, nor did they assess cardiac or respiratory status. The decision to pronounce death was premature, medically unjustified, and racially motivated.

12. The same HFD EMS unit has historically serviced the predominantly Black and Brown neighborhoods surrounding Duane Street, where data and citizen complaints reflect a consistent pattern of slower response times and lower

levels of intervention compared to predominantly white neighborhoods such as River Oaks and West University Place.

13. Plaintiff will establish through discovery and public records that the City and HFD have received repeated complaints from citizens and internal personnel concerning disparate emergency care standards in communities of color but have taken no corrective measures.

14. The Defendants' refusal to resuscitate Michael Ford, Jr. constituted a denial of medical care and government services on account of his race and geographic location—actions that have long been recognized as unconstitutional racial discrimination by state actors. See *City of Memphis v. Greene*, 451 U.S. 100 (1981); *Batson v. Kentucky*, 476 U.S. 79 (1986).

15. Plaintiff further alleges that the Defendants' words, demeanor, and actions—walking in, spending only minutes on scene, pronouncing death without effort, and failing to call an ALS unit—were racially charged in context and reflected bias, conscious or unconscious, that influenced the medical decisions made that day.

## C. Elements of the Claim

16. State Action - Each Defendant acted under color of state law as an employee of the Houston Fire Department. Their actions were performed in the course

and scope of official duties and under authority delegated by the City of Houston.

17. Intentional Discrimination - The Defendants' decision to withhold care from a Black victim in a predominantly Black neighborhood, while providing comprehensive aid in similar emergencies involving white victims in other Houston neighborhoods, constitutes intentional and purposeful racial discrimination.

18. Differential Treatment - Plaintiff will demonstrate, through EMS records and expert statistical analysis, that emergency medical interventions for Black victims of trauma within the City of Houston are consistently shorter in duration and less aggressive in effort than for white victims—a pattern that evidences discriminatory practice and reinforces Defendants' racially motivated conduct.

19. Proximate Cause - The deliberate failure to provide emergency treatment directly caused the death of Michael T. Ford, Jr. The death was neither inevitable nor instantaneous; medical experts will testify that prompt CPR and airway management would have provided a reasonable chance of survival.

20. Clearly Established Law - At the time of the incident, it was clearly established that (a) race-based denial of public services violates the Equal

Protection Clause, and (b) intentional withholding of life-saving treatment

based on race is an unconstitutional act for which no reasonable official

could claim ignorance. See *Whren v. United States*, 517 U.S. 806 (1996);

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).

### D. Qualified Immunity Does Not Apply

21. The Defendants are not entitled to qualified immunity. The right to receive

    equal government protection and services without racial discrimination has

    been clearly established for more than a century. See *Yick Wo v. Hopkins*,

    118 U.S. 356 (1886).

22. Qualified immunity is unavailable where defendants' conduct violates

    clearly established law and no reasonable public official could have believed

    such conduct lawful. *Hope v. Pelzer*, 536 U.S. 730 (2002).

23. No reasonable EMS professional could have believed it lawful to deny

    medical treatment to a wounded Black citizen while disregarding explicit,

    mandatory HFD medical protocols.

24. The deliberate refusal to provide basic life-saving measures—contrary to

    written orders and professional standards—constitutes objective

    unreasonableness under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

25. Further, Defendants acted with actual malice and discriminatory intent, disqualifying them from any immunity under *Owen v. City of Independence*, 445 U.S. 622 (1980).

## E. Damages and Relief

26. As a direct and proximate result of Defendants' intentional racial discrimination and unconstitutional actions, Plaintiff suffered the wrongful death of her son, severe mental anguish, emotional distress, and loss of companionship, society, and future earnings of the decedent.

27. Plaintiff seeks compensatory damages for all pecuniary and non-pecuniary losses resulting from the Defendants' conduct, including loss of consortium and emotional trauma.

28. Plaintiff further seeks punitive damages against each individual Defendant to punish and deter future racially motivated denial of emergency medical care.

29. Plaintiff seeks reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, and any other relief deemed just and equitable by the Court.

## F. Summary

30. In summary, the conduct of Defendants Novak, Hobbs, Mockler, and Grijalva violated the Equal Protection Clause by intentionally and discriminatorily withholding emergency medical care from Michael T. Ford,

Jr., solely because of his race and the racial composition of his

neighborhood.

31. Their actions were willful, malicious, and taken with reckless disregard for

constitutional rights, and the injuries and death suffered by Michael Ford

were the direct and foreseeable consequences of their racial discrimination

under color of state law.

## COUNT 2 – SUBSTANTIVE DUE PROCESS VIOLATION OF THE

## FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

(*Against Defendants JEREMY NOVAK, RYAN HOBBS, MOLLY MOCKLER, and*

*MARCUS GRIJALVA, in their Individual Capacities*)

### A. Legal Basis

1. This cause of action arises under the Due Process Clause of the Fourteenth

    Amendment, which protects every person against governmental conduct that

    is so egregious, arbitrary, and conscience-shocking that it deprives the

    individual of life, liberty, or property without due process of law.

2. The Supreme Court has repeatedly held that a state official's deliberate

    indifference to a person's life or safety can violate substantive due process

    when the conduct is so egregious as to "shock the conscience." *County of*

    *Sacramento v. Lewis*, 523 U.S. 833 (1998); *Collins v. City of Harker*

    *Heights*, 503 U.S. 115 (1992).

3. This standard is met where state actors, possessing time to deliberate, consciously disregard a known and serious risk to life. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Lindsey v. City of Beaumont*, 911 F. Supp. 2d 725 (E.D. Tex. 2012).

4. The Fifth Circuit recognizes that officials who arbitrarily refuse to provide life-saving medical care to a person in their custody or within their sphere of duty may be liable under § 1983 for deliberate indifference that shocks the conscience. *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

### B. Facts Incorporated

5. Plaintiff repeats and re-alleges all preceding paragraphs.

6. On August 18, 2023, Defendants, acting as HFD/EMS personnel under color of state law, arrived within two minutes of a dispatch reporting that Michael T. Ford, Jr., a twenty-seven-year-old African-American male, had been shot near 11507 Duane Street, Houston, Texas.

7. Each Defendant was trained and certified under Houston Fire Department and State of Texas EMS standards, requiring immediate assessment, airway management, and CPR in traumatic cardiac arrest cases unless unmistakable signs of death exist.

8. Upon arrival, bystanders were performing chest compressions. Michael still exhibited warmth and the potential for resuscitation. No decomposition, rigor mortis, decapitation, or other exclusionary conditions were present.

9. Despite these facts—and with no imminent danger preventing aid—Defendants collectively decided not to provide <u>any</u> CPR, oxygenation, intubation, defibrillation, or ALS evaluation. They instead declared death within minutes.

10. This refusal was not the product of emergency haste but of <u>deliberation</u>; the scene was secure, Defendants had time to consider their obligations, and they affirmatively chose inaction in violation of their written protocols.

11. Such calculated indifference to an identifiable person's right to life, in circumstances permitting deliberation, constitutes conscience-shocking conduct under *Lewis*, 523 U.S. at 850–54.

### C. Deliberate Indifference to Known Danger

12. Defendants were on express notice—through their own Patient Care Guidelines and standing orders—that resuscitation must not be withheld absent objective medical indicators of irreversible death.

13. Each Defendant consciously disregarded this known duty. Captain Novak, as the on-scene commander, sanctioned the decision; Defendants Hobbs,

Mockler, and Grijalva executed it by omission, failing to initiate treatment or call for ALS assistance.

14. Their failure was not an error in judgment but a willful disregard of an obvious, substantial risk that Michael would die without intervention. The Fifth Circuit recognizes such conduct as deliberate indifference actionable under the Fourteenth Amendment. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752 (5th Cir. 2001); *Thompson v. Upshur County*, 245 F.3d 447 (5th Cir. 2001).

15. The Defendants' acts and omissions were not mere negligence or malpractice but a purposeful abandonment of duty—one that deprived Michael of any meaningful chance of survival and thereby violated his constitutional right to life and liberty.

### D. The "Shocks-the-Conscience" Standard Satisfied

16. Under *County of Sacramento v. Lewis*, conduct shocks the conscience when officials, having time to deliberate, deliberately ignore a known, grave risk to life. Here, Defendants had several minutes—ample time for reflection—yet consciously chose inaction.

17. No conflicting emergency justified the refusal. The Defendants were not in pursuit, under attack, or faced with split-second decision-making. Their deliberate disregard of an obviously dying young man in a controlled

environment "shocks the conscience" within the meaning of *Lewis*, 523 U.S. at 853.

18. The Fifth Circuit applies *Lewis* to hold officers liable for omissions during non-exigent conditions where there is time for reasoned decision-making. *McClendon*, 305 F.3d at 325; *Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003).

19. The refusal to act, combined with racial animus and disregard for departmental law, rises well above gross negligence and constitutes arbitrary, conscience-shocking abuse of government power.

### E. Clearly Established Law and Absence of Qualified Immunity

20. It has been clearly established since *Lewis* (1998) and *Collins* (1992) that deliberate indifference to a known, serious risk to life in circumstances permitting deliberation violates substantive due process.

21. No reasonable EMS professional could believe that standing idly by while a gunshot victim gasps for life—contrary to training, protocol, and moral duty—is lawful. The unconstitutionality of such conduct is "obvious," satisfying *Hope v. Pelzer*, 536 U.S. 730 (2002).

22. Because Defendants acted willfully and maliciously, and because their actions contravened clearly established law, they are not entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

## F. Causation and Harm

23. Defendants' deliberate indifference was the <u>moving and proximate cause</u> of Michael T. Ford, Jr.'s death. Expert medical testimony will show that immediate CPR and airway management would have given him a significant chance of survival.

24. As a result of Defendants' unconstitutional conduct, Plaintiff suffered the irreparable loss of her son, extreme mental anguish, loss of companionship, emotional distress, and other damages recoverable under 42 U.S.C. § 1983 and state law.

## G. Damages Sought

25. Plaintiff seeks compensatory damages for all pecuniary and non-pecuniary losses flowing from the deprivation of life and liberty, including emotional distress, grief, and loss of familial relationship.

26. Plaintiff further seeks punitive damages against each individual Defendant for their willful, malicious, and conscience-shocking disregard of constitutional rights.

27. Plaintiff also seeks attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

## H. Summary

28. The conduct of Defendants Novak, Hobbs, Mockler, and Grijalva—arriving within reach of saving a young Black man, possessing time and equipment to act, and yet deliberately doing nothing—constitutes deliberate indifference so egregious that it shocks the conscience and violates the Fourteenth Amendment's guarantee of substantive due process.

29. Their actions were the proximate cause of Michael T. Ford, Jr.'s death and the ensuing injury to Plaintiff. No qualified immunity shields them from liability for such blatant constitutional violations.

## COUNT 3 – MUNICIPAL LIABILITY UNDER

## 42 U.S.C. § 1983 (*Monell* CLAIM)

*(Against Defendant CITY OF HOUSTON)*

### A. Legal Basis

1. This claim arises under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). A municipality is liable when the execution of an official policy, custom, or failure to train or supervise amounts to deliberate indifference to constitutional rights and is the moving force behind the constitutional injury.

2. Municipalities enjoy no qualified immunity. *Owen v. City of Independence*, 445 U.S. 622 (1980).

3. The City of Houston, acting through its policymakers—including the Mayor, Fire Chief, and Director of Emergency Medical Services—implemented and maintained policies, customs, and practices that directly caused the deprivation of Michael T. Ford Jr.'s rights to equal protection and due process under the Fourteenth Amendment.

## B. Facts Incorporated

4. Plaintiff re-alleges all preceding paragraphs as if fully set forth.

5. The Houston Fire Department ("HFD") and its EMS Division operate under the authority of the City of Houston and receive federal financial assistance through programs administered by the U.S. Department of Health and Human Services.

6. For years preceding August 18, 2023, the City and HFD were on actual notice of repeated complaints and statistical disparities showing inferior or delayed emergency medical responses in predominantly Black and Brown neighborhoods of Houston.

7. Despite this notice, the City failed to correct the problem, continued to tolerate discriminatory response patterns, and failed to discipline or retrain personnel who disregarded established medical protocols.

8. HFD's *Patient Care Guidelines and Standing Orders*—revised September 10, 2022—require mandatory initiation of CPR and ALS intervention for

traumatic cardiac arrest absent unmistakable signs of death. The City failed
to ensure compliance, supervision, or enforcement of these orders.

9.  The Professional Standards Office and Internal Affairs Division of HFD
    routinely dismissed or ignored misconduct complaints related to unequal
    treatment and medical neglect, thereby signaling tolerance and ratifying
    unconstitutional conduct.

10. On information and belief, the City has never disciplined an EMS crew for
    prematurely declaring death or withholding resuscitation from a trauma
    victim of color, even when such conduct violated written HFD policy.

11. This pattern and practice created a culture of impunity in which HFD
    responders understood that racially disparate or substandard emergency care
    would be excused or ignored by City leadership.

### C. Official Policies and Customs

12. The City maintained the following unconstitutional policies, customs, and
    practices:

    a.  A custom of providing less aggressive or delayed emergency medical
        care in minority neighborhoods, particularly when the victim was a
        young Black male involved in or near incidents of community
        violence;

b. A policy or established practice of failing to investigate and discipline EMS crews for deviations from patient-care protocols;

c. A failure to train EMS and supervisory personnel on nondiscrimination, constitutional obligations, and the mandatory nature of resuscitation protocols; and

d. A custom of ratifying unconstitutional conduct through inaction—accepting deficient investigations, concealing 911 records, and refusing to release EMS run sheets when deaths occurred under questionable circumstances.

13. Each of these customs and policies reflects deliberate indifference to the constitutional rights of persons like Michael T. Ford Jr., who rely on City emergency services for preservation of life.

## D. Deliberate Indifference and Notice

14. The City's policymakers had actual and constructive knowledge of prior incidents involving HFD personnel withholding or mishandling medical care for Black residents. Numerous citizen complaints, internal reports, and news coverage placed the City on notice.

15. Despite that notice, the City chose not to revise training curricula, supervision mechanisms, or disciplinary procedures. This conscious choice

constitutes deliberate indifference. *Board of County Comm'rs v. Brown*, 520

U.S. 397 (1997); *City of Canton v. Harris*, 489 U.S. 378 (1989).

16. The policymaking officials—specifically, the Fire Chief and the City's

Executive Director of Emergency Operations—possessed final

decision-making authority over EMS training, response policies, and

discipline. Their knowledge and inaction are legally imputable to the City.

### E. Causation ("Moving Force")

17. The City's customs and failures were the direct and proximate cause of

Michael T. Ford Jr.'s death.

18. Had the City properly trained, supervised, and disciplined HFD personnel;

enforced mandatory resuscitation standards; and eliminated racial disparities

in emergency response, Defendants Novak, Hobbs, Mockler, and Grijalva

would have rendered aid in accordance with established protocols.

19. The City's deliberate indifference and ratification were the moving force

behind the deprivation of Michael's constitutional rights. *Piotrowski v. City

of Houston*, 237 F.3d 567 (5th Cir. 2001); *Zarnow v. City of Wichita Falls*,

614 F.3d 161 (5th Cir. 2010).

## F. Absence of Qualified Immunity

20. Municipalities are not entitled to qualified immunity. *Owen v. City of Independence*, 445 U.S. 622 (1980). The City's liability turns on its policies and practices, not on the subjective intent of individual officials.

## G. Damages and Relief

21. As a result of the City's unconstitutional policies and deliberate indifference, Plaintiff suffered the wrongful death of her son, loss of companionship, mental anguish, and other compensable injuries.

22. Plaintiff seeks compensatory damages against the City of Houston, as well as attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

23. Plaintiff also seeks declaratory and injunctive relief requiring the City to:

    a. Implement comprehensive, nondiscriminatory EMS training and supervision programs;

    b. Enforce adherence to resuscitation protocols with independent oversight; and

    c. Establish transparent public-reporting procedures for all in-field deaths where resuscitation was withheld.

## COUNT 4 – RACE DISCRIMINATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

## 42 U.S.C. § 2000d et seq.

*(Against Defendant CITY OF HOUSTON)*

### A. Legal Basis

1. Title VI provides, *"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."* 42 U.S.C. § 2000d.

2. Municipal departments that receive federal funding are "programs or activities" within the meaning of Title VI. See *Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003). Because the City of Houston receives federal grants through the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services, and the Federal Emergency Management Agency, its Emergency Medical Services division is subject to Title VI compliance obligations.

3. A municipality is liable under Title VI when it intentionally discriminates on the basis of race in administering a federally funded program or fails to take corrective action after notice of discriminatory effects. *Alexander v. Sandoval*, 532 U.S. 275 (2001); *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582 (1983).

## B. Facts Incorporated

4. Plaintiff re-alleges all preceding paragraphs.

5. On August 18, 2023, the City, through its agents in the Houston Fire Department ("HFD"), denied Michael T. Ford Jr.—a Black male—the benefit of emergency medical services funded in part by federal dollars.

6. The responding EMS crew refused to perform CPR or other life-saving procedures, in violation of HFD's federally mandated Patient Care Guidelines and Standing Orders.

7. The City has long received federal grant funding conditioned on nondiscrimination and equal access to public health and emergency services. Despite that funding, it has failed to train personnel on Title VI requirements or to monitor racial disparities in EMS response.

8. Statistical and testimonial evidence will show that emergency medical responses in Houston's predominantly Black and Latino neighborhoods are shorter in duration and less aggressive in treatment than in predominantly white areas such as River Oaks and West University Place.

9. The City has received multiple complaints—both internal and public—alleging racially disparate EMS practices but has failed to take corrective action or to report findings to its federal funding agencies, constituting deliberate indifference to Title VI obligations.

## C. Elements of Liability

10. HFD/EMS is a program or activity receiving federal financial assistance.

11. By deliberately withholding life-saving aid from a Black victim in a predominantly Black neighborhood while providing aggressive care to similarly situated white victims elsewhere, the City and its agents engaged in intentional racial discrimination in violation of Title VI.

12. The City's policies and failure to train and supervise EMS crews were a substantial factor and proximate cause of the denial of emergency care that resulted in Michael T. Ford Jr.'s death.

13. Prior to this incident, the City had notice of racial disparities and complaints regarding EMS misconduct. Its refusal to implement corrective training or oversight constitutes reckless or intentional discrimination under Title VI. See *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

## D. Clearly Established Law

14. For over half a century, Title VI has prohibited intentional racial discrimination in any federally funded program. No reasonable municipality could believe that racially selective denial of emergency medical care is lawful.

15. The City is liable for both its direct acts and its deliberate failure to supervise and train EMS employees on Title VI compliance. See *Alexander*

*v. Sandoval*, 532 U.S. 275 (2001); *Gebser*, 524 U.S. 274; *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).

## E. Relief Requested

16. Plaintiff seeks judgment against the City of Houston for:

    a. Compensatory damages for the loss of life, pain and suffering, emotional distress, and loss of society and companionship;

    b. Declaratory relief that the City's policies and customs violate Title VI;

    c. Injunctive relief requiring the City to institute mandatory Title VI training for HFD personnel, implement racial-equity audits of EMS responses, and report findings to federal oversight agencies;

    d. Legal fees and costs under 42 U.S.C. § 1988 and 42 U.S.C. § 2000d-7; and

    e. Any other relief deemed just and equitable.

## COUNT 5 – WRONGFUL DEATH

### *(Tex. Civ. Prac. & Rem. Code § 71.002 et seq.)*

### *(Against All Defendants)*

## A. Legal Basis

1. This claim is brought pursuant to the *Texas Wrongful Death Act*, *Tex. Civ. Prac. & Rem. Code* § 71.002–71.004, which provides that when the wrongful act, neglect, carelessness, unskillfulness, or default of one or more

persons causes the death of another, the person or entity responsible is liable for damages to the decedent's surviving parents, children, and spouse.

2. Plaintiff Deangelia King, as the biological mother of Michael T. Ford, Jr., has standing to bring this action individually and as the statutory wrongful death beneficiary.

3. Each of the named defendants—City of Houston, Captain Jeremy Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva—is liable under the Act for conduct and omissions that proximately caused the death of Michael T. Ford, Jr. on August 18, 2023.

### B. Facts Incorporated

4. Plaintiff incorporates by reference all preceding paragraphs, including factual allegations detailing the events surrounding Michael's death.

5. On August 18, 2023, Michael T. Ford, Jr. was shot in a drive-by shooting near 11507 Duane Street, Houston, Texas, a predominantly Black neighborhood located around the corner from Houston Fire Station 55.

6. The responding HFD EMS unit—comprised of Captain Jeremy Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva—arrived within minutes of dispatch. Upon arrival, bystanders were performing CPR and calling for help.

7. Despite the proximity to the fire station, the available equipment, and their professional training, Defendants made a deliberate choice to withhold resuscitative measures, including CPR, airway management, oxygenation, or defibrillation.

8. No ALS unit was called to the scene, and no attempts were made to evaluate or stabilize Michael's condition. Within seven minutes of dispatch, Defendants pronounced him dead and terminated medical efforts.

9. At no point did Defendants determine that Michael met any of the limited exclusionary criteria (such as decapitation, decomposition, or rigor mortis) that would justify the withholding of resuscitation under HFD's *Patient Care Guidelines and Standing Orders* for BLS/ALS (Revised Sept. 10, 2022).

10. Defendants' actions were grossly negligent, reckless, and in direct violation of their own mandatory protocols and recognized medical standards of care, thereby proximately causing the wrongful death of Michael T. Ford, Jr.

11. The City of Houston, as employer and operator of the HFD EMS division, is vicariously liable for the negligent and grossly negligent acts and omissions of its employees under the doctrine of respondeat superior and directly liable for negligent training, supervision, and policy enforcement.

12. The conduct of the Defendants reflects not only negligence but a conscious indifference to the rights and safety of others, satisfying the statutory

definition of gross negligence under *Tex. Civ. Prac. & Rem. Code* § 41.001(11).

### C. Elements and Liability

13. Under *Tex. Civ. Prac. & Rem. Code* § 71.002, a wrongful death action may be brought if the death of a person is caused by the wrongful act, neglect, carelessness, unskillfulness, or default of another.

14. Defendants had a duty to render emergency medical care consistent with HFD protocols and accepted EMS standards.

15. Defendants breached that duty by:

    a. Failing to initiate CPR or basic life support measures;

    b. Failing to call or request an Advanced Life Support (ALS) unit;

    c. Failing to evaluate vital signs or airway status;

    d. Failing to adhere to written departmental protocols governing resuscitation; and

    e. Failing to exercise ordinary care under circumstances that demanded immediate intervention.

16. These breaches proximately caused Michael's death. But for Defendants' refusal to act, Michael would have had a meaningful chance of survival.

17. The City of Houston is also liable under *Tex. Civ. Prac. & Rem. Code* § 101.021(2) of the *Texas Tort Claims Act* for the negligent use or operation of

tangible personal property—such as medical equipment, defibrillators, and ambulances—during the provision of EMS services, which were misused or left unused, resulting in death.

18. Defendants' actions further constitute gross negligence, defined under § 41.001(11) as an act or omission involving an extreme degree of risk, considering the probability and magnitude of potential harm to others, of which the actor has actual, subjective awareness but proceeds with conscious indifference to the rights or safety of others.

19. Each individual Defendant had actual knowledge that failing to perform CPR and call ALS on a trauma patient constituted a life-threatening breach, yet each consciously disregarded that risk, allowing Michael to die unnecessarily.

## D. Damages

20. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff Deangelia King, as surviving mother of the decedent, has suffered and continues to suffer:

  a. Mental anguish, sorrow, and grief from the death of her son;

  b. Loss of companionship, society, comfort, and affection of her child;

  c. Loss of the pecuniary contributions, support, and services that her son would have provided;

   d.  Emotional distress and pain and suffering; and

   e.  Funeral and burial expenses.

21. Plaintiff seeks actual damages in an amount to be proven at trial and
exemplary damages for gross negligence under Tex. Civ. Prac. & Rem. Code
§ 71.009.

## E. Exemplary (Punitive) Damages

22. Defendants' conduct demonstrates conscious disregard for human life and
deliberate indifference to Michael's medical condition. Their refusal to
follow mandated life-saving procedures justifies an award of exemplary
damages to punish and deter similar future conduct.

23. Plaintiff therefore seeks punitive damages against all individual Defendants
and, to the extent permitted by law, against the City of Houston for its gross
negligence in training, supervision, and policy enforcement.

## F. Prayer for Relief

Plaintiff requests judgment against all Defendants, jointly and severally, for:

   a.  Compensatory damages for the full value of Michael T. Ford Jr.'s life,
       including pecuniary loss, mental anguish, and loss of companionship
       and society;

   b.  Funeral and burial expenses;

   c.  Exemplary damages for gross negligence;

    d.  Pre- and post-judgment interest; and

    e.  All other relief—legal or equitable—to which Plaintiff shows herself
entitled.

## COUNT 6 – SURVIVAL ACTION

### *Tex. Civ. Prac. & Rem. Code § 71.021*

*(Against All Defendants)*

### A. Legal Basis

1.  This claim is brought pursuant to the *Texas Survival Statute, Tex. Civ. Prac.
& Rem. Code* § 71.021, which provides that a cause of action for personal
injury survives the death of the injured person and may be prosecuted on
behalf of the decedent's estate.

2.  Under Texas law, a decedent's personal representative or heirs may recover
for the decedent's pre-death pain, suffering, mental anguish, medical
expenses, and other losses sustained between the injury and death.

3.  Plaintiff Deangelia King, as the natural mother and Personal Representative
of the Estate of Michael T. Ford, Jr., brings this action for all damages
recoverable by the Estate of the decedent.

4.  This action lies against all Defendants—City of Houston, Captain Jeremy
Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva—for their

wrongful acts and omissions that caused conscious pain and suffering and led to the death of Michael T. Ford, Jr.

## B. Facts Incorporated

5. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including all factual allegations describing the Defendants' actions and omissions on August 18, 2023.

6. On that date, Michael T. Ford, Jr., age twenty-seven, sustained gunshot wounds near 11507 Duane Street, Houston, Texas, only blocks away from Houston Fire Station 55.

7. When the Houston Fire Department's EMS crew—consisting of Captain Jeremy Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva—arrived, Michael was still alive, exhibiting warmth and potential responsiveness. Bystanders were administering CPR.

8. The crew failed to provide oxygen, failed to perform CPR, failed to assess vital signs, and failed to follow their own Patient Care Guidelines and Standing Orders (Sept. 10, 2022) requiring immediate and continued resuscitation in traumatic arrests until ALS evaluation or hospital transfer.

9. Defendants' inaction and conscious disregard caused Michael to experience extreme suffering, oxygen deprivation, and conscious pain prior to death.

10. Michael's death was not instantaneous. The autopsy report and witness testimony establish that he experienced a period of physiological distress, awareness, and suffering before succumbing to his injuries.

11. These injuries and suffering were directly caused by Defendants' gross negligence, deliberate indifference, and failure to render emergency medical care as required by law and professional duty.

12. Had proper resuscitative measures been applied promptly, there existed a reasonable medical probability that Michael would have survived or at least remained alive long enough to receive definitive trauma care.

### C. Elements of the Claim

13. To prevail under § 71.021, Plaintiff must show that (1) Michael T. Ford, Jr. had a cause of action for personal injuries against the Defendants immediately before his death; and (2) that cause of action did not abate but survives to his Estate.

14. At the time of death, Michael had a valid claim for personal injury due to Defendants' acts and omissions, including:

   a. Failure to perform CPR or administer emergency medical care;

   b. Failure to summon or deploy an ALS unit;

   c. Failure to use available medical equipment;

    d.  Negligent and grossly negligent deviation from HFD protocols and standard medical practice; and

    e.  Denial of equal protection and due process under the Fourteenth Amendment.

15. These wrongful acts and omissions proximately caused Michael to suffer physical pain, mental anguish, loss of oxygen, fear, and emotional distress before death.

16. The Estate of Michael T. Ford, Jr. is therefore entitled to recover all damages that Michael could have recovered had he lived.

### D. Damages Recoverable by the Estate

17. Pursuant to *Tex. Civ. Prac. & Rem. Code* § 71.021(b), Plaintiff, as personal representative of the Estate, seeks recovery for the following:

    a.  Conscious pain and suffering endured by Michael prior to death;

    b.  Mental anguish, fear, and distress experienced while awaiting assistance that never came;

    c.  Medical expenses incurred in connection with emergency and investigative efforts;

    d.  Loss of earning capacity and future income of Michael during his life expectancy;

    e.  Funeral and burial expenses; and

f. Any other compensatory damages recoverable under Texas law.

18. Plaintiff also seeks **exemplary damages** due to the grossly negligent and willful nature of Defendants' conduct, which exhibited conscious indifference to the decedent's rights, safety, and life.

19. Plaintiff seeks all allowable pre- and post-judgment interest on such amounts, together with reasonable attorneys' fees and costs.

### E. Liability of the City of Houston

20. The **City of Houston** is directly liable for the negligent acts and omissions of its employees under **respondeat superior** and **Tex. Civ. Prac. & Rem. Code § 101.021(2)** of the Texas Tort Claims Act, which waives governmental immunity for death or injury caused by the misuse of tangible personal property—here, emergency medical equipment that was available but deliberately not used.

21. The City is also independently liable for negligent training, supervision, and retention of the Defendants, which contributed to the pattern of reckless disregard for established life-saving protocols.

22. As a direct and proximate result of the City's policies, failures, and omissions, Michael suffered needless agony and ultimately died.

## F. Damages and Relief

23. Plaintiff seeks judgment against all Defendants, jointly and severally, for damages recoverable by the Estate of **Michael T. Ford, Jr.**, including:

   a. Compensation for conscious pain and suffering;

   b. Emotional distress and fear of impending death;

   c. Medical and funeral expenses;

   d. Loss of earning capacity;

   e. Exemplary damages for gross negligence; and

   f. All other relief deemed just and equitable.

## COUNT 7 – NEGLIGENCE AND GROSS NEGLIGENCE

*(Against All Defendants)*

### A. Legal Basis

1. This cause of action is brought under the common law of Texas and applicable provisions of the *Texas Civil Practice and Remedies Code*, including §§ 71.002, 71.021, and 41.001(11), to recover damages for negligence and gross negligence resulting in the death of Michael T. Ford, Jr.

2. All Defendants owed Michael a duty to act with ordinary care in rendering emergency medical services, to comply with Houston Fire Department (HFD) protocols, and to provide reasonable medical treatment consistent with their training and established standards of care.

3. Each Defendant breached those duties through acts and omissions amounting to negligence and, in some instances, gross negligence—defined by *Tex. Civ. Prac. & Rem. Code* § 41.001(11) as an act or omission involving an extreme degree of risk, of which the actor had actual, subjective awareness but proceeded with conscious indifference to the rights or safety of others.

4. The City of Houston, through its employees, is vicariously liable for these negligent acts under the doctrine of respondeat superior, and also directly liable for negligent hiring, training, supervision, and policy enforcement within the HFD and its Emergency Medical Services division.

## B. Facts Incorporated

5. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

6. On August 18, 2023, the Defendants, acting in their capacity as emergency medical responders for the City of Houston, were dispatched to the scene of a drive-by shooting involving Michael T. Ford, Jr., a twenty-seven-year-old African-American male, located near 11507 Duane Street, Houston, Texas, within blocks of Fire Station 55.

7. Upon arrival, Defendants Captain Jeremy Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva failed to perform basic, life-saving medical

interventions, including CPR, airway management, defibrillation, and oxygenation, despite HFD's mandatory Patient Care Guidelines and Standing Orders (revised September 10, 2022) requiring such measures for trauma victims absent irreversible signs of death.

8. The EMS report confirms that "resuscitation was withheld." No ALS (Advanced Life Support) unit was summoned, and Defendants left the scene after spending a total of approximately seven minutes, with less than five minutes of on-scene engagement.

9. Defendants' omissions were not accidental. Each was trained and certified to recognize that failure to provide resuscitative measures under these conditions constituted a gross deviation from the professional standard of care.

10. These actions, in the aggregate, constitute not only negligence but gross negligence, as Defendants possessed actual knowledge of an extreme degree of risk to Michael's life and consciously disregarded that risk.

### C. Negligence – Elements and Application

11. To establish negligence under Texas law, Plaintiff must show:

   (1) A duty owed to the decedent;

   (2) A breach of that duty;

   (3) Proximate cause; and

(4) Resulting damages.

See *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

12. **Duty -** Each Defendant owed a duty to exercise ordinary care in responding to emergency calls, consistent with their training, licensing, and departmental mandates. The City of Houston, as employer, owed an independent duty to ensure proper training, supervision, and compliance with patient-care protocols.

13. **Breach -** Defendants breached these duties by:

   a. Failing to provide CPR or basic life support;

   b. Failing to use available medical equipment;

   c. Failing to summon ALS support;

   d. Failing to follow written HFD procedures; and

   e. Prematurely declaring death without a medical basis.

14. **Causation -** Defendants' acts and omissions were both the cause in fact and the proximate cause of Michael's death. But for Defendants' failure to perform basic resuscitation, Michael would not have died when he did.

15. **Damages -** As a result, Plaintiff and the Estate of Michael T. Ford, Jr. suffered pecuniary loss, loss of companionship, mental anguish, and funeral expenses.

## D. Gross Negligence – Elements and Application

16. Texas law defines gross negligence as an act or omission involving (1) an extreme degree of risk, considering the probability and magnitude of potential harm, and (2) actual, subjective awareness of the risk coupled with conscious indifference to the rights or safety of others. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).

17. The Defendants' conduct satisfies both elements. They had actual awareness of the life-threatening risk inherent in failing to treat a gunshot victim yet chose to do nothing, demonstrating conscious indifference to Michael's life.

18. Defendant Captain Novak, as commanding officer, knowingly permitted this breach of duty by failing to ensure protocol compliance and by prematurely pronouncing death, thereby setting the tone for deliberate neglect.

19. Defendants Hobbs, Mockler, and Grijalva, as licensed medical professionals, were each independently aware that the failure to perform CPR in a trauma case violates both medical and departmental standards and can result in death.

20. The Defendants' omissions reflect not a lapse in judgment, but deliberate disregard for the established duties of their profession, constituting gross negligence as a matter of law.

21. The City of Houston, acting through its policymakers and supervisory personnel, exhibited gross negligence in maintaining a custom of non-enforcement of medical protocols, in failing to train personnel in nondiscriminatory treatment, and in ratifying the conduct of its employees after the fact.

22. The City's tolerance of substandard emergency care in minority neighborhoods constitutes institutional recklessness and indifference to the safety of those it serves.

### E. Governmental Liability Under the *Texas Tort Claims Act*

23. Under *Tex. Civ. Prac. & Rem. Code* § 101.021(2), governmental immunity is waived for personal injury or death caused by the "use or misuse of tangible personal property."

24. The EMS crew's failure to use defibrillators, oxygen tanks, and other available medical equipment constitutes a "misuse" of tangible property within the meaning of the statute. See *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175 (Tex. 1994).

25. The City is therefore liable for the negligent and grossly negligent acts of its employees under the *Texas Tort Claims Act*, as well as vicariously under common law.

## F. Damages

26. As a direct and proximate result of Defendants' negligence and gross

    negligence, Plaintiff sustained the following damages:

    a. The death of her son, Michael T. Ford, Jr.;

    b. Pecuniary loss, including the value of financial support Michael

       would have provided;

    c. Mental anguish and emotional distress;

    d. Loss of companionship and society;

    e. Funeral and burial expenses; and

    f. Other compensable losses recognized under Texas law.

27. Plaintiff further seeks exemplary damages against the individual Defendants

    and, to the extent permitted, against the City of Houston for its gross

    negligence, conscious disregard for human life, and institutional tolerance of

    misconduct.

28. Plaintiff also seeks pre- and post-judgment interest, costs, and attorneys' fees

    as permitted by law.

## G. Prayer for Relief

29. Plaintiff respectfully prays that judgment be entered against all Defendants,

    jointly and severally, awarding:

    a. Compensatory damages for all economic and non-economic losses;

b. Exemplary (punitive) damages for gross negligence;

c. Legal fees and costs;

d. Pre- and post-judgment interest; and

e. Such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and as the Wrongful Death Beneficiary and Personal Representative of the Estate of MICHAEL T. FORD, JR., respectfully prays that this Honorable Court enter judgment in her favor and against Defendants, CITY OF HOUSTON; CAPTAIN JEREMY NOVAK; RYAN HOBBS; MOLLY MOCKLER; and MARCUS GRIJALVA, jointly and severally, and grant the following relief:

## A. Declaratory Relief

1. Declare that Defendants, acting under color of state law, violated Michael T. Ford Jr.'s rights under the Fourteenth Amendment to the *United States Constitution*, 42 U.S.C. § 1983, and *Title VI of the Civil Rights Act of 1964,* 42 U.S.C. § 2000d, by denying him equal protection and due process of law on the basis of race and by failing to provide emergency medical treatment owed under established protocols.

2. Declare that the City of Houston, through its official policies, customs, and failures of training and supervision, maintained practices exhibiting

deliberate indifference to the constitutional rights of citizens within its jurisdiction, particularly in predominantly Black neighborhoods.

## B. Injunctive Relief

3. Enjoin the City of Houston from continuing discriminatory, negligent, and grossly negligent emergency medical practices, and order the City to:

   a. Institute mandatory quarterly training for all EMS and Fire personnel on Title VI compliance, racial bias awareness, and medical ethics;

   b. Conduct a racial-equity audit of all EMS responses in Houston, disaggregated by neighborhood and patient race;

   c. Implement public reporting requirements to federal oversight agencies regarding disparities in medical response outcomes; and

   d. Establish an independent oversight committee to investigate and recommend disciplinary or corrective actions against EMS personnel engaging in discriminatory or negligent conduct.

## C. Compensatory Damages

4. Award Plaintiff and the Estate compensatory damages in an amount to be determined by a jury, including but not limited to:

   a. Loss of life and the intrinsic value of Michael T. Ford Jr.'s life;

   b. Conscious pain and suffering endured by Michael prior to death;

    c.  Emotional distress and mental anguish suffered by Plaintiff as mother and wrongful death beneficiary;

    d.  Loss of companionship, society, and familial association;

    e.  Pecuniary losses including loss of earnings and support;

    f.  Medical and funeral expenses; and

    g.  Other tangible and intangible harms recognized under Texas and federal law.

5. Award punitive damages against Defendants Jeremy Novak, Ryan Hobbs, Molly Mockler, and Marcus Grijalva in their individual capacities for conduct showing willful, wanton, and reckless disregard for Michael's constitutional and human rights.

### D. Punitive (Exemplary) Damages

6. Award exemplary damages against the City of Houston, to the extent permitted by law, for its deliberate indifference and reckless failure to train, supervise, and discipline EMS employees whose acts of omission resulted in the death of a citizen entrusted to their care.

### E. Legal' Fees and Costs

7. Award Plaintiff reasonable legal fees, litigation expenses, and costs under 42 U.S.C. § 1988(b), 42 U.S.C. § 2000d–7, and other applicable statutes, to ensure full compensation for prosecution of this civil rights action.

## F. Pre- and Post-Judgment Interest

8. Award pre-judgment interest at the legal rate to compensate for the loss of use of funds from the date of injury to the date of judgment, and post-judgment interest under 28 U.S.C. § 1961 from the date of judgment until paid.

## G. Jury Demand

9. Plaintiff demands a trial by jury on all issues triable by a jury under the *United States Constitution* and applicable law, believing firmly that the conscience of the community must speak to the injustice suffered by Michael T. Ford Jr. and his family.

## H. General Relief

10. Grant such other and further relief as this Honorable Court deems just, proper, and equitable under the circumstances, including any relief necessary to vindicate the public interest in preventing racially discriminatory, reckless, and grossly negligent emergency medical practices within the City of Houston.

Respectfully submitted,

*/s/ DEANGELIA KING*
**Deangelia King - Plaintiff**
***Individually and as Personal***
***Representative of the Estate of***
**Michael T. Ford, Jr., Deceased**
**5613 South Lea Street**
**Houston, TX 77033**
**832-512-0438**
**kingdeangelina@yahoo.com**

Date:  October 16, 2025

## **Verification**

I, Deangelia King, declare under penalty of perjury pursuant to 28 U.S.C. §

1746 that I have read the foregoing *Complaint* and that the factual allegations

contained therein are true and correct to the best of my knowledge, information,

and belief.

**Executed this 16th day of October, 2025.**

*/s/ DEANGELIA KING*
**Deangelia King - Plaintiff**
***Individually and as Personal***
***Representative of the Estate of***
**Michael T. Ford, Jr., Deceased**
**5613 South Lea Street**
**Houston, TX 77033**
**832-512-0438**
**kingdeangelina@yahoo.com**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DEANGELIA KING,** | ) | **JURY TRIAL DEMANDED** |
| **individually and as the** | ) | |
| **Wrongful Death Beneficiary of,** | ) | |
| **and as Personal Representative of,** | ) | |
| **Estate of MICHAEL T. FORD, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.**_____ |
| | ) | |
| **CITY OF HOUSTON; RYAN HOBBS;** | ) | |
| **MOLLY MOCKLER;** | ) | |
| **JEREMY NOVAK; and** | ) | |
| **MARCUS GRIJALVA,** | ) | |
| **in their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

AND NOW THIS_____Day of_____, it is the

order of the Court that the Plaintiff's *Complaint* is:_____

_____

_____

_____

_____

_____

U.S. District Court Judge