IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEANGELIA KING, individually and as the Wrongful Death Beneficiary of, and as Personal Representative of, Estate of MICHAEL T. FORD, JR., | § § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 4:25-cv-04994 |
| CITY OF HOUSTON, | § § § | |
| Defendant. | § § | |

## DEFENDANT CITY OF HOUSTON'S MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6), FED. R. CIV. P.

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Houston files this Motion to Dismiss the Plaintiff's amended complaint [Dkt. #7] pursuant to Fed. Civ. P. Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim, respectfully showing the following:

### ISSUES PRESENTED

1. Plaintiff's claims are barred by statute of limitations.

2. Plaintiff fails to identify an injury in fact fairly traceable to the City, depriving the Court of subject matter jurisdiction.

3. Plaintiff fails to state plausible claim against the City under section 1983 and *Monell*, or Title VI of the Civil Rights Act.

4. The City is immune from Plaintiff's common law tort claims under state law.

5. Failure to state a substantive claim against the City disposes of the Wrongful death and Survival actions.

### STANDARD OF REVEW

**Rule 12(b)(1) – lack of subject matter jurisdiction.**

Subject-matter jurisdiction is inherently a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), (quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379, 382 (1884)). This is because "[f]ederal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A decision to hear a case that's beyond the subject-matter jurisdiction of a federal court isn't a "mere technical violation," but is instead "an unconstitutional usurpation" of power. Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 3522 (West 3d ed April 2022 update).

The irreducible constitutional minimum of standing contains three elements. *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992) (multiple citations omitted). First, the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." *Id.* Second, there must be a causal connection between the injury and the conduct complained of; the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id. See also Spokeo Inc v Robins*, 578 U.S. 330, 338 (2016) (citing *FW/PBS, Inc v Dallas*, 493 US 215, 231 (1990)).

"[S]tanding is not, and must not be, a guessing game." *Kumar v. Frisco Indep. Sch. Dist.*, 443 F. Supp. 3d 771, 788 (E.D. Tex. 2020). A plaintiff bears the burden of establishing each element and must clearly allege facts at the pleading stage that demonstrate each criterion. *Id.* (quoting *Warth v Seldin*, 422 U.S. 490, 518 (1975)). Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012) (quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted)). Indeed, a

presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Consideration of a Rule 12(b)(1) motion isn't limited simply to the facts pleaded in the complaint but may instead include any evidence submitted by the parties, such as affidavits, testimony, and documents. *See Williamson v Tucker*, 645 F2d 404, 413 (5th Cir. 1981). Unlike a Rule 12(b)(6) motion, when a court weighs evidence regarding its own power to hear the case under Rule 12(b)(1), there is no presumptive truthfulness to the plaintiff's allegations. *Id.* The Court has broad authority to resolve factual disputes and may weigh any competing evidence based on credibility assessments. *Id.*

**Rule 12(b)(6) – failure to state a claim.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 544. Dismissal is therefore appropriate if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

In reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (citing Fed. R. Evid. 201(f)). The court "accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to

3

the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations or legal conclusions masquerading as factual conclusions cannot prevent dismissal. *Taylor*, 296 F.3d at 378 (quoting *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993)).

## ARGUMENT AND AUTHORITIES

### I. Plaintiff's lack of standing deprives the Court of subject matter jurisdiction.

Standing often turns on the nature and source of the claim asserted. *Jackson v. City of Hous.*, 143 F.4th 640, 645 (5th Cir. 2025). Because different claims protect against different injuries, an injury in fact for one claim may not constitute an injury in fact for a different claim. *Id.*

Section 1983 claims require either direct governmental action causing a constitutional injury or a sufficient nexus between a private party's actions and governmental conduct. *McKinney v. Irving Independent School Dist.*, 309 F.3d 308, 312 (5th Cir. 2002).[1] Under the latter alternative, the City of Houston is not responsible for a private party's decisions unless it "has exercised coercive power or has provided such significant encouragement, . . . that the choice must in law be deemed to be that of the [City].'" *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989) (citations omitted).

To have standing to sue the City for discrimination under either Title VI or section 1983 and the Fourteenth Amendment, a plaintiff must have suffered a concrete injury that stemmed from qualifying unequal treatment by the City, or a substantive due process deprivation intentionally or with deliberate

---

[1] *See, e.g.*, *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994); *Lewis v. Woods*, 848 F.2d 649, 652 (5th Cir. 1988); *see also United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998) (requiring governmental action for claim under Fourth Amendment); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (Fourteenth Amendment equal protection violation "occurs only when the government treats someone differently than others similarly situated").

4

indifference by the City. Allegations of mere negligence, an indirect and independent injury caused by a third party, or a generalized grievance against allegedly illegal governmental conduct tangential to any alleged injury, do not support standing. *Jackson*, 143 F.4th at 643, 645 (citations omitted). Traceability requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Jackson*, 143 F.4th at 645, 645 n.4 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up); *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

**Plaintiff does not assert an injury traceable to the City**

Plaintiff does not assert any cognizable injury fairly traceable to the City of Houston. Michael Ford's death was caused by the intentional criminal acts of unnamed private actor(s) who shot and killed him on August 18, 2023. Dkt. #7 at ¶¶8-11. Plaintiff does not allege that the City or its employees coerced or determined the shooter in any way. Nor can Plaintiff plausibly show that any injury or the death of Michael Ford was caused by the City's official policies, or the City's employees who arrived after Mr. Ford had already suffered multiple gunshot wounds and was deceased.

The pleadings admit that Michael Ford had suffered multiple gunshot wounds[2] and was already deceased with "a bystander performing chest compressions before HFD arrived." *See* Dkt. #7 at 2 ¶7; *id.* at 3 ¶10; *id.* at 34 Count 6(B)(6). The pleadings rely on and incorporate by reference HFD patient care records[3] showing that Michael Ford was "dead on arrival" and died from gunshot wound(s) to the head. **See Exhibit 1** (EMS patient care records); Dkt. #7 at 3, 14, 10 (claiming to attach patient care

---

[2] Dkt. #7 at 2 ¶7 ("On August 18, 2023, Michael T. Ford, Jr., age 27, suffered gunshot wounds in Houston, Texas"); *id.* at 34 ¶6 ("Michael T. Ford, Jr., age twenty-seven, sustained gunshot wounds"); *id.* at 16 ¶ 21 (gunshot victim).

[3] Dkt. #7 at 3 ¶11; *id.* at 7, Count 1(B)(8); *id.* at 14 Count 2(C)(12); *id.* at 19, Count 3(B)(8).

records that support allegations).[4]

## II. This action is barred by statute of limitations.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

"Because there is no federal statute of limitations for § 1983 claims, district courts use the forum state's personal injury limitations period." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). Plaintiff's alleged section 1983, Title VI, common law tort claims, and associated wrongful death and survival actions, are governed by Texas's two-year statute of limitations for personal injury actions.[5]

A claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the claim. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Each of Plaintiff's asserted claims accrued on August 18, 2023, when all actions giving rise to the complaint and the injury and death of Michael Ford occurred. Dkt. #7 at 2 ¶7. Limitations expired on August 18, 2025.

Plaintiff's amended complaint was filed more than six months after limitations expired, on January 23, 2026, and served on the City. Dkts #7 and #9. Plaintiff's original complaint was also untimely filed more than two months after limitations expired, on October 20, 2025, but was never served on the City or any defendant so relation back would not apply. Dkt. #1. *See Ford v. Anderson Cty.*, 102 F.4th 292, 318 (5th Cir. 2024). This action is barred by limitations.

## III. Failure to serve the City within limitations creates actual prejudice and deprives the court of jurisdiction.

---

[4] The Court may consider and weigh evidence on 12(b)(1) review, which is not limited. Consideration of these records is also appropriate under Rule 12(b)(6) because they are incorporated by reference in the complaint and identified as attachments thereto.

[5] *See Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005) (noting that the statute of limitations on a § 1983 claim in Texas is two years); *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1521 (5th Cir. 1993) (finding that claims brought under 42 U.S.C. § 2000d are governed by the same state limitations period applicable to claims brought under 42 U.S.C. § 1983); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985).

Not only was the amended complaint filed more than six months after limitations expired, but the City was not served until more than six months after limitations expired. The standard of review set out in the United States Court of Appeals for the Fifth Circuit's decision in *Rogers v. Kroger Co.* applies in cases where the plaintiff has failed to serve process and the limitations period expired during the plaintiff's delay. *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 416 (5th Cir. 2006). A delay between filing of a complaint and service ordinarily is to be viewed more seriously than a delay of a like period of time occurring after service of process. In this situation, "a lesser sanction than dismissal would not better serve the interests of justice." *Id.* "Permitting an extension after such a delay is prejudicial by its very nature." *Gartin v. Par Pharm. Cos.*, 289 F. App'x 688, 694-95 (5th Cir. 2008) (citations omitted). "Other courts have affirmed dismissals with prejudice for failure to serve process where the statute of limitations had run, even where the delay was **as short as four months**." *Sealed Appellant 1*, 452 F.3d at 416. Delay alone constitutes extreme prejudice to the defendant if the statute of limitations has expired. *Id.*

Furthermore, under Texas law, the failure to both file suit and serve the City within the statute of limitations deprives the Court of subject matter jurisdiction over all state law claims, including negligence gross negligence, wrongful death and survival actions. *Tex. State Univ. v. Tanner*, 689 S.W.3d 292 (Tex. 2024).

### IV. Plaintiff fails to state a claim against the City under section 1983 and *Monell.*

Municipalities cannot be held liable under § 1983 on a respondeat superior theory, requiring instead a direct causal connection between municipal policy and constitutional deprivations. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). To state a § 1983 claim against a municipality, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017).

A policy is not facially unconstitutional unless it affirmatively allows or compels unconstitutional conduct and cannot be facially unconstitutional solely due to instructions that it leaves out. *Monacelli v. City of Dall.*, No. 24-10067, 2024 U.S. App. LEXIS 28199, at *1 (5th Cir. 2024). "Official policy" includes unwritten practices that are "so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). Moreover, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (footnote omitted). The standard for an alleged failure to train or to supervise is the same as that for municipal liability under a deficient policy. *Brown v Bryan County*, 219 F3d 450, 457 (5th Cir 2000).

The pleadings are devoid of facts to support a plausible *Monell* claim. To the extent they are not conclusory, the allegations against the City are improperly predicated upon a theory of respondeat superior which is not available under Section 1983. *See Harmon v. City of Ocean Springs*, No. 1:24-cv-242-HSO-RPM, 2025 U.S. Dist. LEXIS 141661, at *20-22 (S.D. Miss. 2025), (citing *Piotrowski*, 237 F.3d at 578 (dismissing similar claims "focusing upon unnamed officers' negligence in failing to prevent any future crime from occurring and in stopping the nurse from administering life-saving medical treatment to Chayse").

The pleadings do not indicate that the City maintained an unconstitutional policy, custom, failed to train or enact a policy, but instead complain that the City's policies and procedures were not followed. Plaintiff specifically alleges that the individual EMS crew members acted ***in violation of and***

*contravention to* the City policies, guidelines, and training, ***not pursuant to them***.[6] And even if policies were lacking, the amended complaint does not specifically allege what policies the City failed to adopt or how any such failure amounted to an intentional choice or deliberate indifference. *See id.* This is insufficient to support § 1983 liability against the City. *See Harmon*, LEXIS 141661, at *20-22. Nor can the City be liable for the alleged torts of its employees, which is all that is implausibly pled. *Doe v. Trevino*, 452 F. Supp. 3d 548, 559-61 (S.D. Tex. 2020) (citing *Monell*, 436 U.S. at 691) ("[M]unicipal liability under § 1983 doesn't extend merely on a respondeat superior basis.").

To the extent the amended complaint (Dkt. #7) claims a defective training program, such defects must be specifically alleged, and they are not. S*ee Hutcheson*, 994 F.3d at 482. Instead, the amended complaint makes the conclusory assertion that the City failed to provide HFD personnel with adequate training related to emergency medical care and Title VI reporting and monitoring policies based ***solely*** on the incident involving Michael Ford. The Fifth Circuit has rejected § 1983 claims when "the alleged 'policy or custom' arises from . . . this single case." *See Sanchez v. Young Cty., Texas*, 866 F.3d 274, 280 (5th Cir. 2017); *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020).

Unsupported theories of general statistical disparities in EMS response times and quality,[7] or the conclusory claim that the City receives many "complaints", do not suffice. *Brown*, 219 F3d at 457. No facts are supplied to support an alleged "culture of impunity" and "racially disparate or substandard emergency care," which still would not suffice.[8] *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009).

---

[6] Dkt. #7 at 25 ¶7-8 (alleging the "responding EMS crew refused to perform CPR or other life-saving procedures, ***in violation of*** HFD's federally mandated Patient Care Guidelines and Standing Orders," not pursuant to them."); see also *id.* at 3-4 ¶¶10-14, and 25-26 at ¶¶7-9 (identifying various HFD Guidelines and Standing Orders that the crew failed to follow or acted in contravention of); *id.* at 3 ¶¶8-12; see also 25-26 ¶¶ 7-9 (alleging personnel's decision not to attempt resuscitation or perform life saving measures were in "violation of" and "contravention to" the City/HFD's Guidelines, Policies, and Standing Orders).
[7] Dkt. #7 at 19, Count 3(A)(6)-(8).
[8] Dkt. #7 at 20, Count 3(A)(9)-(11).

A.  **Plaintiff fails to plausibly allege Due Process deprivation in violation of the Fourteenth Amendment**

"There is no freestanding Fourteenth Amendment right to adequate medical care for private citizens. As the Supreme Court explained, it is the state's affirmative act of taking a person into custody and holding them against their will that implicates a due process interest." *Zinsou v. Fort Bend Cty.*, No. 22-20423, 2023 U.S. App. LEXIS 18111, at *9 (5th Cir. 2023) (holding "the mere fact that Ms. Odutayo was placed in an ambulance did not amount to custody, so Plaintiffs cannot proceed with their constitutional claims.") (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989)).

There is no general constitutional right to emergency medical services. This foundational principle severely limits constitutional claims against emergency personnel responding to non-custodial individuals. "No general right to medical care exists; such a right has been found *only* where there exists a special custodial or other relationship between the person and the state." *Kinzie v. Dallas Cnty. Hosp. Dist.*, 106 F. App'x 192, 195 (5th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). "Courts have recognized at most two such limited circumstances – when the state has a special relationship with the person or when the state exposes a person to a danger of its own creation." *Piotrowski v. City of Hous.*, 237 F.3d 567, 583-84 (5th Cir. 2001) (quoting *DeShaney*, 489 U.S. at 196-97 (internal citations and footnotes omitted)). A special relationship exists "only when the person is involuntarily taken into state custody and held against his will through the affirmative power of the state." *Walton v. Alexander,* 44 F.3d 1297, 1304 (5th Cir. 1995). These requirements have been consistently applied across various emergency response contexts. *Beltran v. City of El Paso*, 367 F.3d 299 (5 Cir. 2004) (finding argument that "by encouraging Sonye to stay in the bathroom and telling her that the police were on the way, Amador became the custodian of Sonye's safety," falls outside of the special relationships described by the Supreme Court" because the

operator "did not affirmatively place Sonye in custody by restraining her in the bathroom."); *Kinzie v. Dallas County Hosp. Dist.*, 106 Fed.Appx. 192 (5th Cir. 2003) (plaintiff failed to identify any special custodial or other relationship giving rise to a right to medical care, as was required to claim a constitutional right to medical care).

Plaintiff does not claim that Michael Ford was in the City's custody or that any other special relationship existed between Michael Ford and the City. The pleadings expressly state that Ford was a victim of gunshot wounds from a private actor and EMS responded to the medical emergency. Ford is not alleged to have been shot by City of Houston police officers or EMS personnel. Ford was already deceased and does not allege a danger created by the City. Thus, Ford had no constitutional right to emergency medical services or medical care that could have been violated. The alleged failure to perform chest compressions or other unspecified measures, therefore, did not violate any constitutional right. *See, e.g., Handley v. City of Seagoville, Tex.*, 798 F. Supp. 1267 (N.D. Tex. 1992) ("Due process clause of Fourteenth Amendment does not grant right to state-provided emergency ambulance service, and, thus, heirs of person who died, allegedly as result of failure to receive ambulance service, did not have cause of action against city under § 1983, even if city had policy of denying ambulance service to those outside of city limits.")

Nor does the complaint allege a constitutional deprivation resulting from a state created danger. *Kinzie*, 106 F. App'x at 195 (citing *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir.1997). The state-created danger doctrine provides a narrow exception to the general rule against affirmative constitutional duties, but its application to emergency personnel is severely limited. The state actors must have created or increased the danger to a known victim and acted with deliberate indifference. *Piotrowski*, 237 F.3d at 584 (5th Cir. 2001) (citation omitted). This theory applies "only when the state has 'actual knowledge of a specific risk of harm to a known victim.'" *Moore v. Dall. Indep. Sch. Dist.*, 370 F. App'x 455 (5th Cir.

11

2010). Plaintiff cannot establish that the City affirmatively created or enhanced a danger to Ford. Ford was shot by unnamed private actors in a private residence and died before EMS arrived or knew have known he was in any danger. See Dkt. #7. At most, the EMS crew did nothing and left Ford in the same position he was already in. *See Piotrowski*, 237 F.3d at 584 ("Unlike other cases in which government officials placed persons in danger, the City at most left her in an already dangerous position.").

To the extent Plaintiff relies on federal regulations and general standards of medical care, these do not support a claim either. The Supreme Court has "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Kinzie*, 106 F. App'x at 194 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992)). The Fifth Circuit in *Kinzie* dismissed materially identical allegations to those in this case, including claims of denial of medical care, alleged violation of federal regulations and standards applicable to emergency services, negligence and gross negligence. *Id.* at 194-95 (multiple citations omitted).

**B.     Plaintiff fails to state a plausible Title VI claim or Equal Protection deprivation.**

To state a claim for damages under Title VI, a private litigant must, among other things, "plead facts in support of intentional discrimination." *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) (per curiam) (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001). Dismissal is required when a plaintiff asserts a Title VI claim against an entity based on liability for the alleged discriminatory acts of its employees. Under Title VI, in cases that do not involve an official policy, damages are not available unless an "appropriate person"—an official authorized to institute corrective measures—had "actual knowledge" of the discrimination and responded with "deliberate indifference." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

The complaint does not contain a single factual allegation supporting discriminatory intent on the part of the City through official policy or its employees. Plaintiff neither alleges intentional

discrimination pursuant to any official City policy, nor that an "'appropriate person'—an official authorized to institute corrective measures—had 'actual knowledge' of the discrimination and responded with 'deliberate indifference.'" The Supreme Court has "expressly rejected Title VI liability based on negligence, constructive notice, and respondeat superior." *George v. Mem'l Hermann Health Sys.*, No. 4:22-CV-1073, 2023 U.S. Dist. LEXIS 248677, at *13-15 (S.D. Tex. 2023) (citing *Gebser*, 524 U.S. at 290)).

The pleadings neither provide facts to support a specific training or monitoring failure based on a sufficient pattern, nor the alleged "statistical and testimonial evidence" that show EMS "responses in Houston's predominantly Black and Latino neighborhoods are shorter in duration and less aggressive in treatment than in predominantly white areas such as River Oaks and West University Place." Dkt. 7 at 25 ¶8. Moreover, Courts have consistently rejected similar claims premised on alleged statistical disparities alone. *See, e.g., George*, LEXIS 248677 (dismissing claims that relied on statistical studies about healthcare disparities to support their discrimination claims).

The vague claim that the City has received "multiple complaints," without any details about the substance of those complaints or to establish that discrimination actually occurred is grossly insufficient to support a plausible claim under Rule 8, Fed. R. Civ. P. Dkt. #7 at 25 ¶¶5-9. A subjective conclusion that the crew's alleged "decision to withhold care was motivated at least in part by race-based animus or a racially discriminatory custom of providing inferior emergency care in predominantly Black neighborhoods" is conclusory and completely unrelated to any actual injury. "Allegations of subjective views, without supporting factual allegations, fail to give rise to an inference of intentional discrimination, much less to an inference of deliberate indifference to discrimination." *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020). Irrespectively, Plaintiff cannot rely on the alleged conduct of individuals to claim the City of Houston's discriminatory intent. *Rodgers v. Smith*, 842 F.

App'x 929 (5th Cir. 2021).

## V. Failure to plausibly allege deliberate indifference, moving force, or causation, defeats the claims.

Plaintiff's alleged injuries were caused exclusively by the unnamed private actor or actors that tragically shot and killed Michael Ford. Aside from this incurable flaw, Plaintiff's entire complaint hinges on a complaint that EMS should have performed chest compressions on a victim of gunshot wounds, which defies logic and common sense. Thus, the alleged failures and deficient treatment were not the moving force behind any alleged constitutional violation. *See Harper v. McAndrews*, 499 F. Supp. 3d 312, 328-29 (E.D. Tex. 2020) (finding "it most likely on this record that chest compression or CPR for the victim of a chest wound would likely have increased, not lessened, the suffering" of gunshot victim).

Negligent conduct alone does not amount to a cognizable constitutional violation or § 1983 claim. *Daniels v. Williams*, 474 U.S. 327, 332 (1986). A plaintiff must allege that they were deprived of a right guaranteed to them by the Constitution or other statute. *Id.* at 330; *Thomas v. Sams*, 734 F.2d 185, 190-91 (5th Cir. 1984). The Supreme Court has continually held that a plaintiff must plead that his or her constitutional or statutory deprivation resulted from conduct that was intentional or due to deliberate indifference. *Id.* ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original). *See also Farmer v. Brenan*, 511 U.S. 825, 828-29 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials.").

Importantly, the pleadings show that the EMS crew followed the very standards and guidelines they are alleged to have violated. The pleadings incorporate HFD Patient Care Guidelines and Standing Orders (attached as **Exhibit 2**; also available at: https://www.hfdmd.org/wp-content/uploads/2022/12/HFDProtocols2022.pdf). The pleadings admit Michael Ford had suffered

multiple gunshot wounds but ignore the protocols for treating gunshot wounds and attempt to rely on protocols for traumatic arrest without an injury or bleeding in the head or extremities. These "traumatic arrest" protocols by definition apply to patients with no signs of life due to trauma, but not patients with open injuries like Michael Ford suffered. Exhibit 2 at 145. But even the traumatic arrest protocols permitted withholding of resuscitation efforts to Michael Ford who met "traumatic dead on scene criteria" such that a bystander performed chest compressions. Exhibit 1 at 145 and 132. The pleadings admit CPR was being performed by someone before EMS arrival but ignore the protocols for treating dead-on-scene persons which applied. Exhibit 2 at 145. The pleadings ignore the relevant standards for responding to unresponsive patients with gunshot wounds to the head, instructing to: "Withhold traumatic arrest resuscitation on those who meet traumatic dead on scene criteria (Ref. 8.04 1.e.)." *Id.* at 132, 145. General principles for Trauma Emergencies also permitted withholding of resuscitation under the circumstances alleged. *Id.* at 132 (Part III-63, § 1(e)).

## VI. The City is immune from negligence and gross negligence claims under state law.

The City "enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Tercero v. Tex. Southmost Colt Dist.*, 989 F.3d 291, 297 (5th Cir. 2021) (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006))). Governmental immunity deprives a trial court of subject matter jurisdiction over lawsuits in which the State's political subdivisions have been sued unless immunity is waived by the Legislature. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). "Immunity is waived only by clear and unambiguous language." *Id.* "Governmental immunity from suit defeats a trial court's jurisdiction." *Id.* (brackets and citation omitted). "Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be under the Tort Claims Act for purposes of section 101.106." *Mission Consol. Indep.*

15

*Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (internal quotation marks, brackets, and citation omitted).

Plaintiff does not state any claim within the Texas Tort Claims Act's limited waiver of immunity for alleged injuries caused by the government's negligent use of tangible personal property, motor vehicles, or motor driven equipment. TEX. CIV. PRAC. & REM. CODE § 101.021. The claims fall within areas for which governmental immunity is expressly retained, including: intentional torts,[9] the failure to provide or the method of providing police or fire protection, failure to perform act(s) not required by law; a governmental unit's decision not to perform an act or failure to make a decision on the performance or nonperformance of an act for which the law gives them discretion; and discretionary acts.[10] To the extent any injury is alleged, Plaintiff's claims arose from the action of employees "responding to a 9-1-1 emergency call," so the 9-1-1 exception applies. *Denby*, LEXIS 6174, at *15. The exclusion to the exception does not apply because Plaintiff does not allege the violation of a statute or ordinance applicable to the action. *Id.*

### VII. **Plaintiffs' health-care-liability claim must be dismissed for failure to comply with the expert report requirements.**

Plaintiff's claims premised on the provision of emergency medical services are health care liability claims under Texas law. Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). "To proceed with a health care liability claim, a claimant must comply with the expert report requirement of the Texas Medical Liability Act." *University of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 61 n.1 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

---

[9] *Id.* § 101.057; *City of Watauga v. Gordon*, 2014 WL 2535995, 13-0012 (Tex. 2014); *Quinn v. Guerrero*, 863 F.3d 353 (5th Cir. 2017) (alleged facts supporting state negligence claims against the city were intentional torts, and city was immune).

[10] *Id.* §§ 101.055(3), 101.056(1), (2); *Christilles v. Southwest Texas State Univ.*, 639 S.W.2d 38, 42 (Tex. App.—Austin 1982, writ ref'd n.r.e.), overruled on other grounds by *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580 (Tex. 2005).

The failure to comply with this jurisdictional prerequisite to suit against the City, which enjoys governmental immunity, deprives the Court of subject matter jurisdiction. *City of Hous. v. Denby*, No. 01-21-00422-CV, 2022 Tex. App. LEXIS 6174, at *1 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.).

**VIII.** **Failure to state a substantive claim against the City disposes of the wrongful death and survival actions.**

The Texas wrongful death and survival statutes do not provide independent causes of action; they are merely a statutory vehicle for pursuing remedies that, under common law, could not be pursued after an individual's death. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 271 (5th Cir, 1996) (explaining that "a parent may recover damages analogous to state law wrongful death damages in [section] 1983 action based on the violation of her child's civil rights"); *See, e.g., Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344-45 (Tex. 1992); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993). TEX. CIV. PRAC. & REM. CODE §§71.001-71.004, §71.010; §71.002(b). The statutes allow the heirs, legal representatives, and estate of the injured person to prosecute a suit as if the injured person were still alive. *Kramer*, 858 S.W.2d at 404. Dismissal of each of the underlying claims disposes of any wrongful death or survival actions as well. To the extent Plaintiff tries to assert wrongful death and survival as stand-alone state law tort claims, the City is immune from such claims under state law. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), to dismiss them.

**CONCLUSION AND PRAYER**

Defendant, the City of Houston, respectfully prays that the Honorable Court grant this motion and dismiss the Plaintiffs' claims with prejudice and grant all other relief to which the Defendant may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

<pre>
                           CHRISTY MARTIN
                           Chief, Torts/Civil Rights Section

                    By:    /s/ Melissa Azadeh
                           MELISSA AZADEH
                           Senior Assistant City Attorney
                           *Attorney in Charge*
                           TBN 24064851
                           FBN 1090186
                           melissa.azadeh@houstontx.gov
                           City of Houston Legal Department
                           P.O. Box 368
                           Houston, Texas 77001-0368
                           Tel. (832) 393-6270
                           Fax (832) 393-6259
                           **ATTORNEYS FOR DEFENDANT
                           CITY OF HOUSTON**
</pre>

**CERTIFICATE OF SERVICE**

On this 19th day of February 2027, a true and correct copy of the foregoing document was duly served upon all parties through their attorneys of record by electronically filing same with the District CM/ECF system, in accordance with the Rules, and/or alternatively by e-mail, to the following:

Deangelia King, pro se
5613 South Lea Street
Houston, Texas 77033
832-512-0438
kingdeangeli(a@yahoo.com

/s/ Melissa Azadeh
Melissa Azadeh